131 F.3d 149
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Donald FUENTES, Defendant-Appellant.
 Nos. 96-10070, 96-10156.
 United States Court of Appeals, Ninth Circuit.
 Argued and submitted March 5, 1997.**
Decided Nov. 26, 1997.
 
 Appeal from the United States District Court for the District of Hawaii Alan C. Kay, District Judge, Presiding.
 MEMORANDUM*
 Before: REINHARDT, HALL and THOMPSON, Circuit Judges.
 
 
 1
 Donald Fuentes (Donald) appeals his conviction for conspiracy to possess and distribute methamphetamine and his sentence of 120 months. Sonny Fuentes (Sonny), Donald's brother, appeals his conviction on the conspiracy count, for possessing and distributing methamphetamine, and for assaulting federal agents. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 FACTS
 
 2
 At trial, the government introduced the following evidence. Police Officer Irwin arranged for government informant Benjamin Tabada to engage in a controlled purchase of methamphetamine from Sonny. Tabada paged Sonny and entered a personal code given to Tabada by Sonny. Sonny then called Tabada and told Tabada he could sell him one or two ounces of methamphetamine for $2,500 to $2,700 per ounce. Later that day, Sonny sold Tabada 24.1 grams of methamphetamine for $2,700.
 
 
 3
 Approximately three weeks later, Tabada again called Sonny and arranged to purchase another ounce of methamphetamine. DEA Agent Yuen accompanied Tabada to the location where the purchase was to take place. Tabada met briefly with Sonny and returned to Agent Yuen to get the money. Tabada and Sonny then walked to a parking lot out of Agent Yuen's view. Tabada testified Donald was waiting in Sonny's car and moved to the back seat when they approached the car. He testified Sonny told Donald to give him the "ice," a slang term for methamphetamine. Donald then passed a plastic bag to Sonny which contained 23.9 grams of methamphetamine.
 
 
 4
 A few weeks later, Tabada again called Sonny to discuss the purchase of methamphetamine. Sonny agreed to sell Tabada four more ounces of methamphetamine for $9,000. At the agreed upon time and location, Tabada approached Sonny's car and testified Sonny and Donald were sitting inside the car. Sonny showed Tabada a manila envelope which contained two ounces of methamphetamine. Tabada returned to Agent Yuen's car to get the money and, at that time, Agent Yuen gave the arrest signal.
 
 
 5
 Officer Irwin drove his car towards Sonny's car and parked approximately three to four feet behind the car. DEA Agent Moore drove his car in front of Sonny's car. Agent Gutensohn got out of Agent Moore's car and, with his weapon drawn, he identified himself as a police officer and ordered Sonny and Donald to stop. The agents and officers involved in the arrest testified they were wearing vests with either "HPD" or, "DEA" printed on the vests.
 
 
 6
 Officer Irwin heard tires squealing as Sonny reversed the car and slammed into Officer Irwin's car. The impact forced Officer Irwin's car back approximately three to four feet. The car then lunged towards Agent Gutensohn and sped out of the parking lot.
 
 
 7
 A high speed chase ensued and ended when Officer Irwin's car crashed into Sonny's car. No methamphetamine was found in the car. However, the officers retraced the route Sonny and Donald had driven and found two manila envelopes, containing 110.9 grams of methamphetamine, approximately 50 feet away from the street. The envelopes were found on the side of the street closest to the passenger side, where Donald was sitting. During a search incident to arrest, officers also discovered a scale inside the jacket Donald was wearing.
 
 
 8
 A jury found Donald and Sonny guilty of conspiring to possess and distribute more than one hundred grams of methamphetamine. The jury also found Sonny guilty on six counts of possession of methamphetamine with the intent to distribute and three counts of assaulting federal agents.
 
 DISCUSSION
 A. Sufficiency of the Evidence
 
 9
 Donald first contends the government did not present sufficient evidence that he was a knowing participant in the conspiracy. We disagree.
 
 
 10
 During the first transaction in which Donald was present, Donald handed Sonny the methamphetamine after Sonny told him to give him the "ice." During the Later transaction, Donald was present when Sonny showed Tabada the methamphetamine and the two attempted to escape after office:rs told them to stop. The methamphetamine was found on the side of the street closest to the passenger side, indicating the methamphetamine was thrown from the passenger side, and Donald was sitting in the passenger seat. Also, during the search incident to the arrest, a scale was found in the jacket Donald was wearing This evidence was sufficient. See, e.g., United States v. Segura-Gallegos, 41 F.3d 1266, 1269-70 (9th Cir.1994).
 
 B. Obstruction of Justice
 
 11
 The district court did not err by adding two points to Donald's base offense level for obstruction of justice, pursuant to Sentencing Guideline Section 3C1.1. The district court made adequate findings that Donald committed perjury during trial and these findings are not clearly erroneous. See United States v. Ancheta, 38 F.3d 1114, 1117-19 (9th Cir.1994).
 
 
 12
 The district court found Donald gave "(1) false testimony, (2) on a material matter, (3) with willful intent." Id. at 1118 (citing United States v. Dunnigan, 507 U.S. 87, 94 (1993)). Donald testified at trial that he had no knowledge a drug transaction was occurring, he was not a knowing participant in the conspiracy, and he was not aware methamphetamine was in the manila envelope. He also testified he did not recall whether Sonny's car slammed into a government vehicle and whether government agents with "DEA" emblazoned on their vests approached the car with their guns drawn. At trial, Donald testified that Sonny had "left pretty quickly" from the parking lot and that he did not recall a car parking in front or behind Sonny's car or feel the car strike anything when Sonny left the lot. Donald explained: "I was there, but I wasn't paying attention. I was just minding my own business whatever happened."
 
 
 13
 Donald's testimony that he was not a knowing participant, he had no idea a drug transaction was occurring, and he did not recall Sonny striking a vehicle is incredulous and obviously was willful. The district court did not err by applying the enhancement. See Ancheta, 38 F.3d at 1118-19.
 
 C. Safety Valve Provision
 
 14
 The district court also did not err by denying Donald a "safety valve" reduction to his sentence. As found by the district court, Donald did not provide "any and all information that [he] possesse[d] concerning the offense...." United States v. Thompson, 81 F.3d 877, 879 (9th Cir.), cert. denied, 117 S.Ct. 214 (1996). Donald did not provide information concerning his role in the conspiracy, his observations during the drug trafficking transactions, or information regarding Sonny's involvement. Donald was not entitled to the reduction. See id. at 881.
 
 D. Tabada's Testimony
 
 15
 Sonny raises only one issue on appeal. He argues the district court erred by refusing to strike Tabada's testimony after Tabada invoked his Fifth Amendment right to silence during cross-examination. We disagree.
 
 
 16
 As a witness for the prosecution, Tabada testified on direct examination that he had met with Sonny on several occasions and had purchased methamphetamine from him. He testified he contacted the narcotics department for the following reason:
 
 
 17
 Because I just wanted to straighten out--my life, because my family was--I seen plenty guys that get drug addicts, or something, they get too much problems already, so I just decided to turn in these guys, you know, was dealing drugs.
 
 
 18
 During cross-examination, Tabada testified that he made money gambling and sometimes worked at the "gambling place." He testified he did not report on his 1994 federal income tax return the money he made gambling or the money he earned from a side job. He also testified he received money from the DEA for providing information on Sonny on almost every occasion that he met with the DEA. Tabada also testified he went to the DEA because his wife had caught him with his girlfriend and his girlfriend's friends had begun to threaten him. He testified he went to the DEA for protection.
 
 
 19
 Tabada also testified he sold small quantities of methamphetamine in 1994. Outside the presence of the jury, the district court then advised Tabada of his constitutional rights to remain silent and to counsel. Tabada invoked these rights and chose to remain silent unless the prosecution provided him with immunity. The prosecution refused to do so.
 
 
 20
 Tabada then invoked his right to silence when, during cross-examination, he was asked: (1) whether he had used "ice" or methamphetamine in 1994; (2) whether he bought methamphetamine from Polly Fajardo in 1995; (3) whether he used methamphetamine with Fajardo in 1995; (4) beyond Sonny, the names of other people from whom he purchased methamphetamine in 1995; (5) beyond the three purchases, how many other times he purchased or was involved in the sale of methamphetamine in 1995; (6) whether he went to the DEA because he was in "way over [his] head in dealing drugs;" and (7) whether his girlfriend's friends were threatening him based on his drug dealing activities. The district court denied Sonny's motion to strike Tabada's entire testimony.
 
 
 21
 We review for abuse of discretion the district court's refusal to strike testimony after the witness refuses to answer questions during cross-examination. United States v. Montgomery, 998 F.2d 1468, 1478 (9th Cir.1993). The district court has "wide discretion" in making this determination. United States v. Seifert, 648 F.2d 557, 562 (9th Cir.1980) (quotations and citation omitted). The district court abuses its discretion by refusing to strike the witness's testimony "if invocation of the privilege blocks inquiry into matters which are 'direct' and are not merely 'collateral.' " Id. at: 561. Even if the district court errs by refusing to strike the testimony,. however, we review for harmless error. United States v. Williams, 626 F.2d 697, 702 (9th Cir.1980).
 
 
 22
 Assuming, without deciding, that the district court erred, any error was harmless. Tabada's refusal to answer the specific questions clearly would not have undermined the government's case. See id. The evidence against Sonny was overwhelming. Also, Sonny's counsel had ample opportunity to test Tabada's credibility and did elicit evidence damaging to Tabada's credibility. Tabada admitted he had engaged in illegal and deceitful conduct and had sold methamphetamine. His testimony also contradicted his earlier testimony that he provided information against Sonny because he felt it was the right thing to do. Tabada testified that he received regular payments from the DEA for providing the information and that he went to the DEA for protection after being threatened by his girlfriend's friends. Finally, had Tabada answered the particular questions, the answers would not have related to the details of the methamphetamine purchases from Sonny. In these circumstances, any error was harmless. See id.
 
 
 23
 AFFIRMED.
 
 
 24
 REINHARDT, J., concurring in part and dissenting in part.
 
 
 25
 I believe the district court erred in refusing to strike Tabada § testimony. I would, therefore, reverse with respect to the conspiracy convictions of both Sonny and Donald.
 
 
 26
 Sonny and Donald were entitled as a matter of constitutional right under the Confrontation Clause to explore Tabada's bias. See Delaware v. Van Arsdall, 475 U.S. 673 (1986); Davis v. Alaska, 415 U.S. 308 (1974). They were, however, denied the crucial opportunity to expose how and why Tabada's past drug dealings may have been responsible for his decision to cooperate with the government and to testify against Sonny and Donald. Furthermore, on direct examination, the government elicited from Tabada a favorable account of his reasons for cooperating with law enforcement and on re-direct attempted to rehabilitate him by eliciting a different, but again favorable, account of his reasons for testifying adversely to the defendants. Under these circumstances, cross-examination as to Tabada's motives was neither cumulative nor collateral, and his repeated fifth amendment refusals to answer questions put to him for the purpose of exposing those motives required the district court to strike his testimony. Because Tabada's testimony was the only direct evidence on the conspiracy counts, those convictions must be reversed.
 
 
 27
 The majority assumes that the failure to strike Tabada's testimony was error, but concludes that it was harmless. In explaining this conclusion, the majority first states that the evidence against Sonny was "overwhelming." As to the conspiracy counts, this is clearly incorrect. The majority fails to isolate or even discuss the evidence with respect to the conspiracy convictions. Instead, in explaining why the error was harmless, it next launches into a discussion of how Sonny's counsel adequately explored certain areas involving Tabada's credibility. While this discussion might be relevant to whether the trial judge committed error by refusing to strike Tabada's testimony, an error the majority has already assumed, it does not pertain to the question whether the error was harmless. There is, indeed, no further explanation for its wholly unsupported conclusion with respect to the conspiracy convictions.
 
 
 28
 The district court's failure to strike Tabada's testimony was clearly not harmless beyond a reasonable doubt--the standard required for constitutional error--with respect to either conspiracy conviction. In fact, both those convictions were based almost exclusively on Tabada's testimony. Tabada's testimony that on one occasion Donald handed Sonny an envelope containing methamphetamine when asked to "[g]ive me the ice" was the only direct evidence of Donald's participation in a conspiracy and the only direct evidence that Donald even knew of his brother's drug dealings or sought to assist him.[1] Accordingly, the failure to strike Tabada's testimony was not harmless error with respect to Donald, and I would reverse his conspiracy conviction.[2]
 
 
 29
 For similar reasons, the failure to strike did not constitute harmless error with respect to Sonny's conspiracy conviction. The elimination of Tabada's testimony would have left the jury with no evidence on which to conclude that Sonny had conspired with anyone at all, known or unknown. The government neither alleged nor presented evidence that Sonny had any co-conspirators other than Donald. Accordingly, I would reverse Sonny's conspiracy conviction as well.
 
 
 30
 With respect to the remaining convictions--Sonny's convictions on the substantive counts --- I would affirm.
 
 
 
 **
 The panel unanimously finds this case suitable for disposition without oral argument. Fed. R.App. P. 34(a); 9th Cir. R. 34-4
 
 
 *
 This disposition is riot appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Apart from Tabada's testimony, the government's case against Donald consisted entirely of a few items of circumstantial evidence--his passive presence in the car on May 18, the presence of a scale in his nephew's jacket that he was wearing that day, and the fact that the drugs recovered were found on the side of the road corresponding to the side of the car on which he had been sitting
 
 
 [2]
 While Donald, unlike Sonny, does not directly challenge on appeal the district court's failure to strike Tabada's testimony, that failure does not forfeit his right to relief. Ordinarily, we do not consider matters on appeal that are not specifically argued in the appellant's opening brief. United States v. Ullah, 976 F.2d 509, 514 (9th Cir.1992) (quoting Miller v. Fairchild Indus., 797 F.2d 727, 738 (9th Cir.1986)). Donald's case falls, however, within various exceptions to this rule. "[W]e may review an issue if the failure to raise the issue properly did not prejudice the defense of the opposing party," id., and in this case, Donald's failure to raise the issue has in no way prejudiced or impaired the government's position on appeal. The government has responded to Sonny's argument fully and in a manner that draws no distinction between appellants--indeed, it argues that appellants "put on a joint defense"--and both appeals have been argued by the same attorney, for the government. Moreover, it would be "manifestly unjust" to reverse Sonny's conspiracy conviction, but not Donald's, given that the same error affected both defendants. Id